UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-23024

JURY TRIAL DEMANDED

BLANCA BARRIENTOS,

      Plaintiff,

v.

SAKS FIFTH AVENUE LLC,

      Defendant.

_____ /

## COMPLAINT

1. BLANCA BARRIENTOS, individually, by and through the attorney, AN Law Firm P.A.,

   brings this action against Defendant, SAKS FIFTH AVENUE LLC, alleging as follows:

2. The Plaintiff, BLANCA BARRIENTOS, brings this action against SAKS FIFTH AVENUE

   LLC, ("Defendant" and/or SAKS FIFTH) for violations of the Americans with Disabilities

   Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42

   U.S.C. §§ 12101 to 12213 (collectively, the "ADA"), the Family and Medical Leave Act, 29

   U.S.C. Chapter 28 (as amended) ("FMLA"), the Florida Civil Rights Act (FCRA), §§ 760.01

   *et seq.*, Fla. Stat. § 440 for Termination based on Workers Compensation Retaliation, and

   unpaid wages under Fla. Stat. § 440.

3. At all times relevant, Plaintiff was employed by Defendant, SAKS FIFTH.

4. Defendant harassed, created a hostile work environment, retaliated, interfered and terminated

   Plaintiff due to disability and/or perceived disability, requests for a reasonable

   accommodation, use of FMLA and/or use of Workers Compensation benefits. As a result,

   Plaintiff has suffered significant emotional and monetary damages.

## JURY DEMAND

5. Plaintiff demands a trial by jury on all claims properly triable by a jury.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the ADA and the FMLA. This court also has supplemental jurisdiction over Plaintiff's, related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

## VENUE

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district and all Defendant reside in Florida, 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, 28 U.S.C. § 1391(b)(3), in that Defendant are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## PARTIES

8. Plaintiff is a citizen and reside[d] in Florida.

9. Plaintiff, at all relevant times were employee, as defined by the ADA/FMLA and the relevant State Statutes referenced above.

10. SAKS FIFTH AVENUE LLC is a Foreign Limited Liability Company with its principla address in New York NY, with retail stores throughout the state of Florida and was an employer as defined by the ADA/FMLA and relevant state Statutes.

11. SAKS FIFTH AVENUE LLC can be served via its registered agent in Florida, CORPORATION SERVICE COMPANY, 1201 HAYS STREET, TALLAHASSEE, FL 32301-2525.

## ADA CONDITIONS PRECEDENT

12. On or about March 3, 2018, Plaintiff timely filed a charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

13. On June 05, 2019, the EEOC issued Plaintiff a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADA.

14. Contemporaneously with the filing of this Complaint, Plaintiff filed with The Florida Commission on Human Relations.

## FMLA CONDITIONS PRECEDENT

15. Defendant are an "employer" for purposes of the FMLA because it is engaged in an industry or activity affecting commerce and it has employed 50 or more employees for each working day during each of 20 or more calendar weeks in the current or preceding calendar year and/or Defendant were eligible employers pursuant to the Family Medical Leave Act and/or The Defendant are employers as defined under the FMLA.

16. Plaintiff is an "eligible employee" for purposes of FMLA coverage, i.e. employed for at least 12 months by Defendant and provided at least 1,250 hours of service in the 12 months immediately preceding the need for leave (Plaintiff were eligible employee of Defendant as defined by the FMLA).

17. Defendant has the minimum number of employees and/or Plaintiff were entitled to FMLA leave because of a qulafying reason as defined by the FMLA (and was in fact approved for FMLA leave by Defendant).

18. Plaintiff gave Defendant proper notice of intent to take leave under the FMLA after expressly notifying Defendant, which alerted the Defendant of the need for medical leave. As such,

Defendant possessed actual knowledge of Plaintiff's, serious health condition and need for leave.

## COUNT ONE

### Failure to Provide a Reasonable Accommodation in Violation of the ADA

19. Plaintiff repeats and realleges paragraphs 1 through 14 hereof, as if fully set forth herein.

20. Plaintiff began working for Defendant in one of their Miami retail stores as a sales associate on or about November 07, 2006 until her termination on September 06, 2017.

21. At all relevant times Plaintiff was an employee of Defendant and was qualified.

22. On or about 6 months prior to Plaintiff's termination, Plaintiff gave notice to Defendant of her disability and request for a reasonable accommodation, (i.e. time off work, etc.) via several doctor notes which requested the accommodation and which Plaintiff submitted to Defendant.

23. Plaintiff remained a top performer/qualified performer despite her disability/serious medical condition.

24. Not only was Plaintiff's request for reasonable accommodation ignored, Plaintiff was harassed. Plaintiff proper engaged in protected activity when she objected to such harassment and requested medical leave.

25. For example, Plaintiff's manager would make negative comments when Plaintiff requested to take a break to check her medical condition but never commented or reprimanded other sales representatives when they took breaks.

26. For example, Plaintiff's manager would not allow her to work sitting or would avoid giving Plaintiff tasks that would allow her to be sitting, even after Plaintiff requested

accommodations, yet would allow other sales associates to sit while working despite not needing accommodations.

27. This harassment, hostile work environment and intentional failure to accommodate/violation of doctor's orders, continued until Plaintiff fainted at work and rescue was required to be called. Plaintiff was ordered to take 2 weeks off of work, which would not have been necessary had Plaintiff been granted her reasonable accommodations.

28. Plaintiff again complained that her accommodations were being ignored and about the harassment, retaliation and hostile work environment, but again Defendant failed to enter the inter active process with Plaintiff and did not intervene with the harassment, retaliation and hostile work environment.

29. Less than 2 weeks later, Plaintiff was terminated.

30. Defendant denied Plaintiff any reasonable accommodation and created a hostile work environment.

31. Plaintiff, having been diagnosed and whom properly submitted medical documentation regarding her request, was a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended and/or was perceived to be disabled by Defendant. As a result of Plaintiff's disability, major life activities, are substantially limited.

32. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111 of the ADA. Plaintiff could perform the essential functions of the position with or without a reasonable accommodation.

33. Defendant denied Plaintiff reasonable accommodation and refused to inter into the interactive process to attempt a reasonable accommodation.

34. Rather than engaging in the interactive process to address Plaintiff's request for an accommodation, Defendant decided to create a hostile work environment.

35. Tellingly, this all began after Plaintiff requested reasonable medical accommodations and during her last 6 months of employment after years of service to the Defendant.

36. Defendants reason for termination is pretextual as the transaction that Plaintiff was terminated for was approved by a manager whom was not fired, and which was a transaction completed not only by Plaintiff, but all other employees for years always, approved by management.

37. Defendant terminated Plaintiff due to her request for reasonable accommodations.

38. After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff accrued wages per not only under Florida Statute but even Defendants own written policy. In fact, Plaintiff had submitted written request and explanation prior to a lawsuit being filed but it took Defendants several months, and even after Plaintiff retained an attorney, Defendant still took more than 2 months to confirm that Plaintiff was owed wages.

39. Plaintiff suffered damages as a result of Defendant' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

40. Defendant intentionally violated Plaintiff's rights under the ADA with malice or reckless indifference, and, as a result, are liable for punitive damages.

41. Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on ADA accommodations, in violation of the foregoing statutes, as the Defendant failed to adhere to their own written polices, to respond to proper notice/requests for accommodations, failed to enter into a legitimate interactive process with employees

whom required ADA accommodations, failed to respond to complaints and/or implement

corrective measures and/or maintains a pattern and practice of routinely harassing,

terminating, failing to accommodate, all in violation of the ADA.

## COUNT TWO

### Retaliation in Violation of the ADA

42. Plaintiff repeats and realleges paragraphs 1 through 14 hereof, as if fully set forth herein.

43. Plaintiff began working for Defendant in one of their Miami retail stores as a sales associate
on or about November 07, 2006 until her termination on September 06, 2017.

44. At all relevant times Plaintiff was an employee of Defendant and was qualified.

45. On or about 6 months prior to Plaintiff's termination, Plaintiff gave notice to Defendant of
her disability and request for a reasonable accommodation, (i.e. time off work, etc.) via
several doctor notes which requested the accommodation and which Plaintiff submitted to
Defendant.

46. Plaintiff remained a top performer/qualified performer despite her disability/serious medical
condition.

47. Not only was Plaintiff's request for reasonable accommodation ignored, Plaintiff was
harassed. Plaintiff proper engaged in protected activity when she objected to such harassment
and requested medical leave.

48. For example, Plaintiff's manager would make negative comments when Plaintiff requested to
take a break to check her medical condition but never commented or reprimanded other sales
representatives when they took breaks.

49. For example, Plaintiff's manager would not allow her to work sitting or would avoid giving
Plaintiff tasks that would allow her to be sitting, even after Plaintiff requested

accommodations, yet would allow other sales associates to sit while working despite not needing accommodations.

50. This harassment, hostile work environment and intentional failure to accommodate/violation of doctor's orders, continued until Plaintiff fainted at work and rescue was required to be called. Plaintiff was ordered to take 2 weeks off of work, which would not have been necessary had Plaintiff been granted her reasonable accommodations.

51. Plaintiff again complained that her accommodations were being ignored and about the harassment, retaliation and hostile work environment, but again Defendant failed to enter the inter active process with Plaintiff and did not intervene with the harassment, retaliation and hostile work environment.

52. Less than 2 weeks later, Plaintiff was terminated.

53. Defendant denied Plaintiff any reasonable accommodation and created a hostile work environment.

54. Plaintiff, having been diagnosed and whom properly submitted medical documentation regarding her request, was a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended and/or was perceived to be disabled by Defendant. As a result of Plaintiff's disability, major life activities, are substantially limited.

55. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111 of the ADA. Plaintiff could perform the essential functions of the position with or without a reasonable accommodation.

56. Defendant denied Plaintiff reasonable accommodation and refused to inter into the interactive process to attempt a reasonable accommodation.

57. Rather than engaging in the interactive process to address Plaintiff's request for an accommodation, Defendant decided to create a hostile work environment.

58. Tellingly, this all began after Plaintiff requested reasonable medical accommodations and during her last 6 months of employment after years of service to the Defendant.

59. Defendants reason for termination is pretextual as the transaction that Plaintiff was terminated for was approved by a manager whom was not fired, and which was a transaction completed not only by Plaintiff, but all other employees for years always, approved by management.

60. Defendant terminated Plaintiff due to her engaging in protected activity, i.e. complaints that her request for reasonable accommodations were being ignored and instead a hostile work environment was being created and Plaintiff was being harassed.

61. After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff accrued wages per not only under Florida Statute but even Defendants own written policy. In fact, Plaintiff had submitted written request and explanation prior to a lawsuit being filed but it took Defendants several months, and even after Plaintiff retained an attorney, Defendant still took more than 2 months to confirm that Plaintiff was owed wages.

62. Plaintiff suffered damages as a result of Defendant' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

63. Defendant intentionally violated Plaintiff's rights under the ADA with malice or reckless indifference, and, as a result, are liable for punitive damages.

64. Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on ADA accommodations, in violation of the foregoing statutes, as the

Defendant failed to adhere to their own written polices and/or consistently and/or intentionally failed to enter into legitimate interactive process with employees regarding reasonable accommodations which resulted in loss of reasonable accommodations by employees whom properly placed Defendant on notice of such need.

65. Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on ADA accommodations, in violation of the foregoing statutes, as the Defendant failed to respond to proper notice/requests for accommodations, failed to enter into a legitimate interactive process with employees whom required ADA accommodations, failed to respond to complaints and/or implement corrective measures and/or maintains a pattern and practice of routinely harassing, terminating, failing to accommodate, all in violation of the ADA.

## COUNT THREE

### Discharge in Violation of the ADA

66. Plaintiff repeats and realleges paragraphs 1 through 14 hereof, as if fully set forth herein.

67. Plaintiff, BLANCA BARRIENTOS began working for Defendant in one of their Miami retail stores as a sales associate on or about November 07, 2006 until her termination on September 06, 2017.

68. At all relevant times Plaintiff was an employee of Defendant and was qualified.

69. On or about 6 months prior to Plaintiff's termination, Plaintiff gave notice to Defendant of her disability and request for a reasonable accommodation, (i.e. time off work, etc.) via several doctor notes which requested the accommodation and which Plaintiff submitted to Defendant.

70. Plaintiff remained a top performer/qualified performer despite her disability/serious medical condition.

71. Not only was Plaintiff's request for reasonable accommodation ignored, Plaintiff was harassed. Plaintiff proper engaged in protected activity when she objected to such harassment and requested medical leave.

72. For example, Plaintiff's manager would make negative comments when Plaintiff requested to take a break to check her medical condition but never commented or reprimanded other sales representatives when they took breaks.

73. For example, Plaintiff's manager would not allow her to work sitting or would avoid giving Plaintiff tasks that would allow her to be sitting, even after Plaintiff requested accommodations, yet would allow other sales associates to sit while working despite not needing accommodations.

74. This harassment, hostile work environment and intentional failure to accommodate/violation of doctor's orders, continued until Plaintiff fainted at work and rescue was required to be called. Plaintiff was ordered to take 2 weeks off of work, which would not have been necessary had Plaintiff been granted her reasonable accommodations.

75. Plaintiff again complained that her accommodations were being ignored and about the harassment, retaliation and hostile work environment, but again Defendant failed to enter the inter active process with Plaintiff and did not intervene with the harassment, retaliation and hostile work environment.

76. Less than 2 weeks later, Plaintiff was terminated.

77. Defendant denied Plaintiff any reasonable accommodation and created a hostile work environment.

78. Plaintiff, having been diagnosed and whom properly submitted medical documentation regarding her request, was a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended and/or was perceived to be disabled by Defendant. As a result of Plaintiff's disability, major life activities, are substantially limited.

79. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111 of the ADA. Plaintiff could perform the essential functions of the position with or without a reasonable accommodation.

80. Defendant denied Plaintiff reasonable accommodation and refused to inter into the interactive process to attempt a reasonable accommodation.

81. Rather than engaging in the interactive process to address Plaintiff's request for an accommodation, Defendant decided to create a hostile work environment.

82. Tellingly, this all began after Plaintiff requested reasonable medical accommodations and during her last 6 months of employment after years of service to the Defendant.

83. Defendants reason for termination is pretextual as the transaction that Plaintiff was terminated for was approved by a manager whom was not fired, and which was a transaction completed not only by Plaintiff, but all other employees for years always, approved by management.

84. Defendant terminated Plaintiff due to her disability and/or because the perceived Plaintiff to be disabled.

85. After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff accrued wages per not only under Florida Statute but even Defendants own written policy. In fact, Plaintiff had submitted written request and explanation prior to a lawsuit being filed but

it took Defendants several months, and even after Plaintiff retained an attorney, Defendant still took more than 2 months to confirm that Plaintiff was owed wages.

86. Plaintiff suffered damages as a result of Defendant' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

87. Defendant intentionally violated Plaintiff's rights under the ADA with malice or reckless indifference, and, as a result, are liable for punitive damages.

88. Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on ADA accommodations, in violation of the foregoing statutes, as the Defendant failed to adhere to their own written polices and/or consistently and/or intentionally failed to enter into legitimate interactive process with employees regarding reasonable accommodations which resulted in loss of reasonable accommodations by employees whom properly placed Defendant on notice of such need.

89. Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on ADA accommodations, in violation of the foregoing statutes, as the Defendant failed to respond to proper notice/requests for accommodations, failed to enter into a legitimate interactive process with employees whom required ADA accommodations, failed to respond to complaints and/or implement corrective measures and/or maintains a pattern and practice of routinely harassing, terminating, failing to accommodate, all in violation of the ADA.

## COUNT FOUR

### Interference in Violation of the ADA

90. Plaintiff repeats and realleges paragraphs 1 through 14 hereof, as if fully set forth herein.

91. Plaintiff, BLANCA BARRIENTOS began working for Defendant in one of their Miami retail stores as a sales associate on or about November 07, 2006 until her termination on September 06, 2017.

92. At all relevant times Plaintiff was an employee of Defendant and was qualified.

93. On or about 6 months prior to Plaintiff's termination, Plaintiff gave notice to Defendant of her disability and request for a reasonable accommodation, (i.e. time off work, etc.) via several doctor notes which requested the accommodation and which Plaintiff submitted to Defendant.

94. Plaintiff remained a top performer/qualified performer despite her disability/serious medical condition.

95. Not only was Plaintiff's request for reasonable accommodation ignored, Plaintiff was harassed. Plaintiff proper engaged in protected activity when she objected to such harassment and requested medical leave.

96. For example, Plaintiff's manager would make negative comments when Plaintiff requested to take a break to check her medical condition but never commented or reprimanded other sales representatives when they took breaks.

97. For example, Plaintiff's manager would not allow her to work sitting or would avoid giving Plaintiff tasks that would allow her to be sitting, even after Plaintiff requested accommodations, yet would allow other sales associates to sit while working despite not needing accommodations.

98. This harassment, hostile work environment and intentional failure to accommodate/violation of doctor's orders, continued until Plaintiff fainted at work and rescue was required to be called. Plaintiff was ordered to take 2 weeks off of work, which would not have been necessary had Plaintiff been granted her reasonable accommodations.

99. Plaintiff again complained that her accommodations were being ignored and about the harassment, retaliation and hostile work environment, but again Defendant failed to enter into the inter active process with Plaintiff and did not intervene with the harassment, retaliation and hostile work environment.

100.    Less than 2 weeks later, Plaintiff was terminated.

101.    Defendant denied Plaintiff any reasonable accommodation and created a hostile work environment.

102.    Plaintiff, having been diagnosed and whom properly submitted medical documentation in regard to her request, was a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended and/or was perceived to be disabled by Defendant. As a result of Plaintiff's disability, major life activities, are substantially limited.

103.    Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111 of the ADA. Plaintiff could perform the essential functions of the position with or without a reasonable accommodation.

104.    Defendant denied Plaintiff reasonable accommodation and refused to inter into the interactive process to attempt a reasonable accommodation.

105.    Rather than engaging in the interactive process to address Plaintiff's request for an accommodation, Defendant decided to create a hostile work environment.

106.    Tellingly, this all began after Plaintiff requested reasonable medical accommodations and during her last 6 months of employment after years of service to the Defendant.

107.    Defendants reason for termination is pretextual as the transaction that Plaintiff was terminated for was approved by a manager whom was not fired, and which was a transaction completed not only by Plaintiff, but all other employees for years always, approved by management.

108.    Defendant terminated Plaintiff due to her entering into the interactive process/protected activity covered by the ADA such as request for reasonable accommodations.

109.    After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff accrued wages per not only under Florida Statute but even Defendants own written policy. In fact, Plaintiff had submitted written request and explanation prior to a lawsuit being filed but it took Defendants several months, and even after Plaintiff retained an attorney, Defendant still took more than 2 months to confirm that Plaintiff was owed wages.

110.    Plaintiff suffered damages as a result of Defendant' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

111.    Defendant intentionally violated Plaintiff's rights under the ADA with malice or reckless indifference, and, as a result, are liable for punitive damages.

112.    Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on ADA accommodations, in violation of the foregoing statutes, as the Defendant failed to adhere to their own written polices and/or consistently and/or intentionally failed to enter into legitimate interactive process with employees regarding

reasonable accommodations which resulted in loss of reasonable accommodations by employees whom properly placed Defendant on notice of such need.

113.    Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on ADA accommodations, in violation of the foregoing statutes, as the Defendant failed to respond to proper notice/requests for accommodations, failed to enter into a legitimate interactive process with employees whom required ADA accommodations, failed to respond to complaints and/or implement corrective measures and/or maintains a pattern and practice of routinely harassing, terminating, failing to accommodate, all in violation of the ADA.

## COUNT FIVE

### Failure to Provide a Reasonable Accommodation in Violation of the FCRA

114.    Plaintiff repeats and realleges paragraphs 1 through 14 hereof, as if fully set forth herein.

115.    Plaintiff, BLANCA BARRIENTOS began working for Defendant in one of their Miami retail stores as a sales associate on or about November 07, 2006 until her termination on September 06, 2017.

116.    At all relevant times Plaintiff was an employee of Defendant and was qualified.

117.    On or about 6 months prior to Plaintiff's termination, Plaintiff gave notice to Defendant of her disability and request for a reasonable accommodation, (i.e. time off work, etc.) via several doctor notes which requested the accommodation and which Plaintiff submitted to Defendant.

118.    Plaintiff remained a top performer/qualified performer despite her disability/serious medical condition.

119.   Not only was Plaintiff's request for reasonable accommodation ignored, Plaintiff was
harassed. Plaintiff proper engaged in protected activity when she objected to such harassment
and requested medical leave.

120.   For example, Plaintiff's manager would make negative comments when Plaintiff
requested to take a break to check her medical condition but never commented or
reprimanded other sales representatives when they took breaks.

121.   For example, Plaintiff's manager would not allow her to work sitting or would avoid
giving Plaintiff tasks that would allow her to be sitting, even after Plaintiff requested
accommodations, yet would allow other sales associates to sit while working despite not
needing accommodations.

122.   This harassment, hostile work environment and intentional failure to
accommodate/violation of doctor's orders, continued until Plaintiff fainted at work and
rescue was required to be called. Plaintiff was ordered to take 2 weeks off of work, which
would not have been necessary had Plaintiff been granted her reasonable accommodations.

123.   Plaintiff again complained that her accommodations were being ignored and about the
harassment, retaliation and hostile work environment, but again Defendant failed to enter into
the inter active process with Plaintiff and did not intervene with the harassment, retaliation
and hostile work environment.

124.   Less than 2 weeks later, Plaintiff was terminated.

125.    Defendant denied Plaintiff any reasonable accommodation and created a hostile work
environment.

126.   Plaintiff, having been diagnosed and whom properly submitted medical documentation in
regard to her request, was a qualified individual with a disability under the Americans with

Disabilities Act of 1990, as amended and/or was perceived to be disabled by Defendant. As a result of Plaintiff's disability, major life activities, are substantially limited.

127.    Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111 of the ADA. Plaintiff could perform the essential functions of the position with or without a reasonable accommodation.

128.    Defendant denied Plaintiff reasonable accommodation and refused to inter into the interactive process to attempt a reasonable accommodation.

129.    Rather than engaging in the interactive process to address Plaintiff's request for an accommodation, Defendant decided to create a hostile work environment.

130.    Tellingly, this all began after Plaintiff requested reasonable medical accommodations and during her last 6 months of employment after years of service to the Defendant.

131.    Defendants reason for termination is pretextual as the transaction that Plaintiff was terminated for was approved by a manager whom was not fired, and which was a transaction completed not only by Plaintiff, but all other employees for years always, approved by management.

132.    Defendant terminated Plaintiff due to her request for reasonable accommodations.

133.    After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff accrued wages per not only under Florida Statute but even Defendants own written policy. In fact, Plaintiff had submitted written request and explanation prior to a lawsuit being filed but it took Defendants several months, and even after Plaintiff retained an attorney, Defendant still took more than 2 months to confirm that Plaintiff was owed wages.

134.     Plaintiff suffered damages as a result of Defendant' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

135.     Defendant intentionally violated Plaintiff's rights under the FCRA with malice or reckless indifference, and, as a result, are liable for punitive damages.

136.     Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on FCRA accommodations, in violation of the foregoing statutes, as the Defendant failed to adhere to their own written polices and/or consistently and/or intentionally failed to enter into legitimate interactive process with employees regarding reasonable accommodations which resulted in loss of reasonable accommodations by employees whom properly placed Defendant on notice of such need.

137.     Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on FCRA accommodations, in violation of the foregoing statutes, as the Defendant failed to respond to proper notice of requests, violations nor properly interact with employees whom required FCRA accommodations, failed to respond to complaints and/or implement corrective measures and/or maintains a pattern and practice of routinely harassing, terminating, failing to accommodate, all in violation of the FCRA.

## COUNT SIX

### Retaliation in Violation of the FCRA

138.     Plaintiff repeats and realleges paragraphs 1 through 14 hereof, as if fully set forth herein.

139.     Plaintiff, BLANCA BARRIENTOS began working for Defendant in one of their Miami retail stores as a sales associate on or about November 07, 2006 until her termination on September 06, 2017.

140.    At all relevant times Plaintiff was an employee of Defendant and was qualified.

141.    On or about 6 months prior to Plaintiff's termination, Plaintiff gave notice to Defendant

of her disability and request for a reasonable accommodation, (i.e. time off work, etc.) via

several doctor notes which requested the accommodation and which Plaintiff submitted to

Defendant.

142.    Plaintiff remained a top performer/qualified performer despite her disability/serious

medical condition.

143.    Not only was Plaintiff's request for reasonable accommodation ignored, Plaintiff was

harassed. Plaintiff proper engaged in protected activity when she objected to such harassment

and requested medical leave.

144.    For example, Plaintiff's manager would make negative comments when Plaintiff

requested to take a break to check her medical condition but never commented or

reprimanded other sales representatives when they took breaks.

145.    For example, Plaintiff's manager would not allow her to work sitting or would avoid

giving Plaintiff tasks that would allow her to be sitting, even after Plaintiff requested

accommodations, yet would allow other sales associates to sit while working despite not

needing accommodations.

146.    This harassment, hostile work environment and intentional failure to

accommodate/violation of doctor's orders, continued until Plaintiff fainted at work and

rescue was required to be called. Plaintiff was ordered to take 2 weeks off of work, which

would not have been necessary had Plaintiff been granted her reasonable accommodations.

147.    Plaintiff again complained that her accommodations were being ignored and about the

harassment, retaliation and hostile work environment, but again Defendant failed to enter into

the inter active process with Plaintiff and did not intervene with the harassment, retaliation and hostile work environment.

148.    Less than 2 weeks later, Plaintiff was terminated.

149.    Defendant denied Plaintiff any reasonable accommodation and created a hostile work environment.

150.    Plaintiff, having been diagnosed and whom properly submitted medical documentation in regard to her request, was a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended and/or was perceived to be disabled by Defendant. As a result of Plaintiff's disability, major life activities, are substantially limited.

151.    Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111 of the FCRA. Plaintiff could perform the essential functions of the position with or without a reasonable accommodation.

152.    Defendant denied Plaintiff reasonable accommodation and refused to inter into the interactive process to attempt a reasonable accommodation.

153.    Rather than engaging in the interactive process to address Plaintiff's request for an accommodation, Defendant decided to create a hostile work environment.

154.    Tellingly, this all began after Plaintiff requested reasonable medical accommodations and during her last 6 months of employment after years of service to the Defendant.

155.    Defendants reason for termination is pretextual as the transaction that Plaintiff was terminated for was approved by a manager whom was not fired, and which was a transaction completed not only by Plaintiff, but all other employees for years always, approved by management.

156.    Defendant terminated Plaintiff due to her engaging in protected activity, i.e. complaints that her request for reasonable accommodations were being ignored and instead a hostile work environment was being created and Plaintiff was being harassed.

157.    After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff accrued wages per not only under Florida Statute but even Defendants own written policy. In fact, Plaintiff had submitted written request and explanation prior to a lawsuit being filed but it took Defendants several months, and even after Plaintiff retained an attorney, Defendant still took more than 2 months to confirm that Plaintiff was owed wages.

158.    Plaintiff suffered damages as a result of Defendant' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

159.    Defendant intentionally violated Plaintiff's rights under the FCRA with malice or reckless indifference, and, as a result, are liable for punitive damages.

160.    Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on FCRA accommodations, in violation of the foregoing statutes, as the Defendant failed to adhere to their own written polices and/or consistently and/or intentionally failed to enter into legitimate interactive process with employees regarding reasonable accommodations which resulted in loss of reasonable accommodations by employees whom properly placed Defendant on notice of such need.

161.    Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on FCRA accommodations, in violation of the foregoing statutes, as the Defendant failed to respond to proper notice of requests, violations nor properly interact with employees whom required FCRA accommodations, failed to respond to complaints

and/or implement corrective measures and/or maintains a pattern and practice of routinely harassing, terminating, failing to accommodate, all in violation of the FCRA.

## COUNT SEVEN

### Discharge in Violation of the FCRA

162.    Plaintiff repeats and realleges paragraphs 1 through 14 hereof, as if fully set forth herein.

163.    Plaintiff, BLANCA BARRIENTOS began working for Defendant in one of their Miami retail stores as a sales associate on or about November 07, 2006 until her termination on September 06, 2017.

164.    At all relevant times Plaintiff was an employee of Defendant and was qualified.

165.    On or about 6 months prior to Plaintiff's termination, Plaintiff gave notice to Defendant of her disability and request for a reasonable accommodation, (i.e. time off work, etc.) via several doctor notes which requested the accommodation and which Plaintiff submitted to Defendant.

166.    Plaintiff remained a top performer/qualified performer despite her disability/serious medical condition.

167.    Not only was Plaintiff's request for reasonable accommodation ignored, Plaintiff was harassed. Plaintiff proper engaged in protected activity when she objected to such harassment and requested medical leave.

168.    For example, Plaintiff's manager would make negative comments when Plaintiff requested to take a break to check her medical condition but never commented or reprimanded other sales representatives when they took breaks.

169.    For example, Plaintiff's manager would not allow her to work sitting or would avoid giving Plaintiff tasks that would allow her to be sitting, even after Plaintiff requested

accommodations, yet would allow other sales associates to sit while working despite not needing accommodations.

170.    This harassment, hostile work environment and intentional failure to accommodate/violation of doctor's orders, continued until Plaintiff fainted at work and rescue was required to be called. Plaintiff was ordered to take 2 weeks off work, which would not have been necessary had Plaintiff been granted her reasonable accommodations.

171.    Plaintiff again complained that her accommodations were being ignored and about the harassment, retaliation and hostile work environment, but again Defendant failed to enter the inter active process with Plaintiff and did not intervene with the harassment, retaliation and hostile work environment.

172.    Less than 2 weeks later, Plaintiff was terminated.

173.     Defendant denied Plaintiff any reasonable accommodation and created a hostile work environment.

174.    Plaintiff, having been diagnosed and whom properly submitted medical documentation regarding her request, was a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended and/or was perceived to be disabled by Defendant. As a result of Plaintiff's disability, major life activities, are substantially limited.

175.    Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111 of the FCRA. Plaintiff could perform the essential functions of the position with or without a reasonable accommodation.

176.    Defendant denied Plaintiff reasonable accommodation and refused to inter into the interactive process to attempt a reasonable accommodation.

177.     Rather than engaging in the interactive process to address Plaintiff's request for an accommodation, Defendant decided to create a hostile work environment.

178.     Tellingly, this all began after Plaintiff requested reasonable medical accommodations and during her last 6 months of employment after years of service to the Defendant.

179.     Defendant terminated Plaintiff due to her disability and/or perceived Plaintiff to be disabled and terminated her due to this perception.

180.     Defendants reason for termination is pretextual as the transaction that Plaintiff was terminated for was approved by a manager whom was not fired, and which was a transaction completed not only by Plaintiff, but all other employees for years always, approved by management.

181.     After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff accrued wages per not only under Florida Statute but even Defendants own written policy. In fact, Plaintiff had submitted written request and explanation prior to a lawsuit being filed but it took Defendants several months, and even after Plaintiff retained an attorney, Defendant still took more than 2 months to confirm that Plaintiff was owed wages.

182.     Plaintiff suffered damages as a result of Defendant' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

183.     Defendant intentionally violated Plaintiff's rights under the FCRA with malice or reckless indifference, and, as a result, are liable for punitive damages.

184.     Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on FCRA accommodations, in violation of the foregoing statutes, as the Defendant failed to adhere to their own written polices and/or consistently and/or

intentionally failed to enter into legitimate interactive process with employees regarding reasonable accommodations which resulted in loss of reasonable accommodations by employees whom properly placed Defendant on notice of such need.

185.    Defendant, acting by and through its employees, maintained a policy of discrimination and harassment based on FCRA accommodations, in violation of the foregoing statutes, as the Defendant failed to respond to proper notice of requests, violations nor properly interact with employees whom required FCRA accommodations, failed to respond to complaints and/or implement corrective measures and/or maintains a pattern and practice of routinely harassing, terminating, failing to accommodate, all in violation of the FCRA.

## COUNT EIGHT

### FMLA Interference

186.    Plaintiff repeats and realleges paragraphs 1 through 11 and 15 through 18 hereof, as if fully set forth herein.

187.    Plaintiff began working for Defendant on November 7, 2006.

188.    At all relevant times Plaintiff was an employee of Defendant and was qualified.

189.    Defendant was placed on notice and of Plaintiff need for FMLA when Plaintiff applied and was granted intermittent FMLA leave from 06/15/2017 through 12/15/2017via Defendant's third-party administrator CIGNA.

190.    Plaintiff remained a top performer/qualified performer despite the serious medical condition.

191.    Defendant interfered, restrained, intimidated, harassed, deterred and terminated Plaintiff while needing FMLA leave and/or while FMLA was requested.

192.   For example, Plaintiff's manager would make negative comments about Plaintiff's

FMLA needs, use, and medical condition such as denying Plaintiff's requested to take a

break to check her medical condition or to complete tasks that could be done sitting down,

time off work, etc. but never commented or reprimanded  other sales representatives when

they took breaks/always assigned other employees tasks that allowed them to sit down, etc.

193.   Tellingly, Plaintiff was terminated less than 3 months after notice of Plaintiff's need of

FMLA.

194.   Defendant terminated Plaintiff due to her request for FMLA.

195.   Defendants reason for termination is pretextual as the transaction that Plaintiff was

terminated for was approved by a manager whom was not fired, and which was a transaction

completed not only by Plaintiff, but all other employees for years always approved by

management.

196.   After Plaintiff's termination, Defendant continued its interference by not paying Plaintiff

accrued wages per not only under Florida Statute but even Defendants own written policy. In

fact, Plaintiff had submitted written request and explanation prior to a lawsuit being filed but

it took Defendants several months, and even after Plaintiff retained an attorney, Defendant

still took more than 2 months to confirm that Plaintiff was owed wages.

197.   Plaintiff requested were based on a good faith, Plaintiff was eligible for FMLA leave;

Plaintiff was entitled to FMLA leave; Plaintiff gave Defendant proper notice of the need for

leave; and Defendant interfered with, restrained, deterred and terminated Plaintiff due to the

FMLA leave request.

198.   Defendant interference, restraint, intimidation and deterrence were adverse employment

action as these actions made Plaintiff and other employees reluctant to exercise the FMLA

leave; and Defendant took these adverse employment actions in substantial part because of Plaintiff's request for FMLA leave as Plaintiff was terminated just a few months after requesting FMLA leave.

199.    Defendant did not act in good faith nor did they have an objective, reasonable ground to believe that their action did not violate the FMLA.

200.    Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by the FMLA due to interference, restraint and deterrence of FMLA rights as Plaintiff made it known to the Defendant that medical leave under the FMLA may be required but Defendant interfered and deterred Plaintiff and other employees from using such medical leave by terminating Plaintiff.

201.    Defendant, acting by and through its employees, maintained a policy of interference, discrimination and harassment based on FMLA, in violation of the foregoing statutes, as the Defendant failed to adhere to their own written polices and/or consistently and/or intentionally failed to enter into legitimate interactive process with Plaintiff regarding FMLA leave, plus interfered, restrained, intimidated, harassed, deterred and terminated Plaintiff while needing FMLA leave and/or while FMLA was requested.

202.    As a direct and proximate result of the actions of Defendant is in violation of the FMLA, Plaintiff has suffered damages including lost wages, loss of benefits and other compensation and interest thereon. Plaintiff's loss of wages and benefits is ongoing.  Plaintiff is entitled to lost wages (plus pre-judgment interest), the recovery of full costs to replace the benefits or the full cost of the benefits as paid by the employer.

203.    Moreover, Plaintiff is entitled to recover liquidated damages under the FMLA.

204.    Plaintiff is entitled to reasonable attorneys' fees, reasonable expert witness fees, and other

costs of the action pursuant to the FMLA.

205.    As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of

wages, both in the past, present, and future, as well as compensatory damages.

206.    Defendant' actions were harsh, oppressive, and malicious, and as a further and proximate

cause, Plaintiff has suffered emotional distress.  The wrongs done by the Defendant were

aggravated by the kind of willfulness, wantonness and malice for which the law allows the

imposition of exemplary damages.  Plaintiff, therefore, seeks exemplary damages in a sum to

be determined by the trier of fact to serve as punishment to deter Defendant from such

conduct in similar situations.

207.    Defendant' actions and conduct as described herein and the resulting damage and loss to

Plaintiff has necessitated Plaintiff's retaining the services of AN Law Firm, P.A., 7900 Oak

Lane #400 AN Law, Miami Lakes, FL 33016, to initiate this proceeding.  Plaintiff seeks

recovery of reasonable and necessary attorney's fees.

208.    Plaintiff hereby requests a jury trial.

209.    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant

be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the

following relief:  Judgment against Defendant, for actual damages sustained by Plaintiff as

alleged herein; Grant Plaintiff general damages for the damage to Plaintiff caused by

Defendant' violations alleged in this Complaint; Pre-judgment interest at the highest legal

rate; Post-judgment interest at the highest legal rate until paid; Back pay; Front pay; Punitive

damages; Liquidated damages; Damages for mental pain and mental anguish;  Exemplary

damages; Attorney's fees; All costs of court expended herein; Actual monetary losses

sustained by Plaintiff as a direct result of the violation, such as the cost of providing care, up to a sum equal to twelve (12) weeks of wages or salary; and such other and further relief, at law or in equity, general or special to which Plaintiff may show she is justly entitled.

## COUNT NINE

## FMLA Retaliation

210.    Plaintiff repeats and realleges paragraphs 1 through 11 and 15 through 18 hereof, as if fully set forth herein.

211.    Plaintiff began working for Defendant on November 7, 2006.

212.    At all relevant times Plaintiff was an employee of Defendant and was qualified.

213.    Defendant was placed on notice and of Plaintiff need for FMLA when Plaintiff applied and was granted intermittent FMLA leave from 06/15/2017 through 12/15/2017, via Defendant's third-party administrator CIGNA.

214.    Plaintiff remained a top performer/qualified performer despite the serious medical condition.

215.    Defendant Retaliation, restrained, intimidated, harassed, deterred and terminated Plaintiff while needing FMLA leave and/or while FMLA was requested.

216.    For example, Plaintiff's manager would make negative comments about Plaintiff's FMLA needs, use, and medical condition such as denying Plaintiff's requested to take a break to check her medical condition or to complete tasks that could be done sitting down or take medical leave but never commented or reprimanded  other sales representatives when they took breaks/always assigned other employees tasks that allowed them to sit down, etc.

217.    Tellingly, Plaintiff was terminated less than 3 months after notice of Plaintiff's need of FMLA.

218.   Defendant terminated Plaintiff due to her request for FMLA.

219.   Defendants reason for termination is pretextual as the transaction that Plaintiff was

terminated for was approved by a manager whom was not fired, and which was a transaction

completed not only by Plaintiff, but all other employees for years always approved by

management.

220.   After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff

accrued wages per not only under Florida Statute but even Defendants own written policy. In

fact, Plaintiff had submitted written request and explanation prior to a lawsuit being filed but

it took Defendants several months, and even after Plaintiff retained an attorney, Defendant

still took more than 2 months to confirm that Plaintiff was owed wages.

221.   Plaintiff requested were based on a good faith, Plaintiff was eligible for FMLA leave;

Plaintiff was entitled to FMLA leave; Plaintiff gave Defendant proper notice of the need for

leave; and Defendant Retaliation with, restrained, deterred and terminated Plaintiff due to the

FMLA leave request.

222.   Defendant Retaliation, restraint, intimidation and deterrence were adverse employment

action as these actions made Plaintiff and other employees reluctant to exercise the FMLA

leave; and Defendant took these adverse employment actions in substantial part because of

Plaintiff's request for FMLA leave as Plaintiff was terminated just a few months after

requesting FMLA leave.

223.   Defendant did not act in good faith nor did they have an objective, reasonable ground to

believe that their action did not violate the FMLA.

224.   Defendant, by and through its agents and employees, intentionally engaged in the

aforementioned practices, policies, customs and usages made unlawful by the FMLA due to

Retaliation, restraint and deterrence of FMLA rights as Plaintiff made it known to the Defendant that medical leave under the FMLA may be required but Defendant Retaliated and deterred Plaintiff and other employees from using such medical leave by terminating Plaintiff.

225.    Defendant, acting by and through its employees, maintained a policy of retaliation, discrimination and harassment based on FMLA, in violation of the foregoing statutes, as the Defendant failed to adhere to their own written polices and/or consistently and/or intentionally failed to enter into legitimate interactive process with Plaintiff regarding FMLA leave, plus retaliated, restrained, intimidated, harassed, deterred and terminated Plaintiff while needing FMLA leave and/or while FMLA was requested.

226.    As a direct and proximate result of the actions of Defendant is in violation of the FMLA, Plaintiff has suffered damages including lost wages, loss of benefits and other compensation and interest thereon. Plaintiff's loss of wages and benefits is ongoing.  Plaintiff is entitled to lost wages (plus pre-judgment interest), the recovery of full costs to replace the benefits or the full cost of the benefits as paid by the employer.

227.    Moreover, Plaintiff is entitled to recover liquidated damages under the FMLA.

228.    Plaintiff is entitled to reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action pursuant to the FMLA.

229.    As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages.

230.    Defendant' actions were harsh, oppressive, and malicious, and as a further and proximate cause, Plaintiff has suffered emotional distress.  The wrongs done by the Defendant were aggravated by the kind of willfulness, wantonness and malice for which the law allows the imposition of exemplary damages.  Plaintiff, therefore, seeks exemplary damages in a sum to

be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

231.    Defendant' actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of AN Law Firm, P.A., 7900 Oak Lane #400 AN Law, Miami Lakes, FL 33016, to initiate this proceeding.  Plaintiff seeks recovery of reasonable and necessary attorney's fees.

232.    Plaintiff hereby requests a jury trial.

233.    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:  Judgment against Defendant, for actual damages sustained by Plaintiff as alleged herein; Grant Plaintiff general damages for the damage to Plaintiff caused by Defendant' violations alleged in this Complaint; Pre-judgment interest at the highest legal rate; Post-judgment interest at the highest legal rate until paid; Back pay; Front pay; Punitive damages; Liquidated damages; Damages for mental pain and mental anguish;  Exemplary damages; Attorney's fees; All costs of court expended herein; Actual monetary losses sustained by Plaintiff as a direct result of the violation, such as the cost of providing care, up to a sum equal to twelve (12) weeks of wages or salary; and such other and further relief, at law or in equity, general or special to which Plaintiff may show she is justly entitled.

## COUNT TEN

## <u>WORKERS COMPENSATION RETALIATION</u>

234.    Plaintiff repeats and realleges paragraphs 1 through 14 hereof, as if fully set forth herein.

235.    Plaintiff was always qualified for the job.

236.    Plaintiff was involved in a work-related injury in or about May 2017 and notified
Defendant.

237.    Plaintiff was forced to file a claim for workers compensation with an attorney as the
Defendant did not resolve the request on their own.

238.    Plaintiff was terminated in retaliation for filing a claim for workers compensation
benefits on or about September 06, 2017.

239.    Plaintiff was terminated due to the workplace injury, need for workers compensation
benefits and because she filed a claim for workers compensation benefits with an attorney.

240.    Tellingly, Plaintiff was terminated while her workers compensation claim was still
pending.

241.    Defendants reason for termination is pretextual as the transaction that Plaintiff was
terminated for was approved by a manager whom was not fired, and which was a transaction
completed not only by Plaintiff, but all other employees for years always, approved by
management.

242.    After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff
accrued wages per not only under Florida Statute but even Defendants own written policy. In
fact, Plaintiff had submitted written request and explanation prior to a lawsuit being filed but
it took Defendants several months, and even after Plaintiff retained an attorney, Defendant
still took more than 2 months to confirm that Plaintiff was owed wages.

243.    Plaintiff timely made the Workers' Compensation claim to the employer.

244.    Plaintiff's employment with Defendants was terminated without good cause and, instead,
motivated by the worker's compensation claim.

245.   Fla. Stat. § 440.205 states: No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law. (Fla. Stat. § 440.205, (2003)).

246.   As a result of Plaintiff's filing or attempts to file a claim for workers' compensation benefits, Defendants discharged and/or threatened to discharge Plaintiff.

247.   Defendants' actions were willful, wanton, and outrageous and without regard for Plaintiff's rights.

248.   Because of Defendants' actions, Plaintiff has suffered economic and emotional damages.

249.   WHEREFORE, Plaintiff demands judgment against Defendants and relief in the form of: economic damages, including lost wages, benefits, and other remuneration; fringe benefits; front and back pay; any other compensatory damages allowable under law; attorney's fees to the extent permitted by law and costs, emotional distress damages, prejudgment and post judgment interest and any other relief the court deems appropriate.

## COUNT ELEVEN

### **UNPAID WAGES**

250.   Plaintiff repeats and realleges paragraphs 1 through 14 hereof, as if fully set forth herein.

251.   After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff accrued wages per not only under Florida Statute but even Defendants own written policy.

252.   In fact, Plaintiff had called the hotline and confirmed the numbers prior to submitted written request and explanation, all prior to retaining an attorney and filing a lawsuit as Defendants did not respond and even took several months after an attorney was involved.

253.    Plaintiff timely made a request for unpaid wages and after more than 15 days of no

payments, Plaintiff was forced to retain an attorney and take on costs/fees to recovery her

unpaid wages.

254.    Plaintiff's was not paid by Defendant without good cause as they had all relevant

information in their fingertips but refused to pay a terminated employee in need of the money

instead, all motivated by the employees need for ADA accommodations, FMLA, worker's

compensation claim.

255.    Defendants' actions were willful, wanton, and outrageous and without regard for

Plaintiff's rights.

256.    Section 448.101(3), Fla. Stat., provides that an employer means "any private individual,

firm, partnership, institution, corporation, or association that employs ten or more persons."

257.    At all times pertinent, Plaintiff was an employee as defined by FL Ch. 448, (§448.101(2),

Fla. Stat.) as a W2 employee, and Defendant was an employer as defined by FL Ch. 448 as

they are a corporation/association with 10 or more employees, etc.

258.    Plaintiff has fully earned wages and is entitled to payment.

259.    Specifically, Plaintiff is entitled to the unpaid personal time off that accrued during her

last two years of employment of over 30 hours pursuant to FL statute and Defendant's own

written policy, plus liquidated damages, costs, attorney fees, etc.

260.    This money was owed for more than 3 months after Plaintiff's termination even after

receiving written notice from an attorney, which Defendant has not provided any reasonable

reason for such a delay of earned wages.

261.    WHEREFORE, Plaintiff respectfully prays for judgment in the amount of the unpaid

wages and overtime plus interest and reasonable attorneys' fees and costs pursuant to Florida

Statute Chapter 448 (§448.08, Fla. Stat.), and such other relief as this Court deems just and proper.

## COUNT TWELVE

### UNPAID WAGES

262.    Plaintiff repeats and realleges paragraphs 1 through 14 hereof, as if fully set forth herein.

263.    After Plaintiff's termination, Defendant continued its retaliation by not paying Plaintiff accrued wages per not only under Florida Statute and Miami-Dade Wage Theft Ordinance, Chapter 22 of the Miami Dade but even under Defendant's own written policy.

264.    In fact, Plaintiff had called the hotline and confirmed the numbers prior to submitted written request and explanation, all prior to retaining an attorney and filing a lawsuit as Defendants did not respond and even took several months after an attorney was involved.

265.    Plaintiff timely made a request for unpaid wages and after more than 15 days of no payments, Plaintiff was forced to retain an attorney and take on costs/fees to recovery her unpaid wages.

266.    Plaintiff's was not paid by Defendant without good cause as they had all relevant information in their fingertips but refused to pay a terminated employee in need of the money instead, all motivated by the employees need for ADA accommodations, FMLA, worker's compensation claim.

267.    Defendants' actions were willful, wanton, and outrageous and without regard for Plaintiff's rights.

268.    According to the Miami-Dade Wage Theft Ordinance, Chapter 22 of the Miami Dade, a "wage theft violation" occurs when an employer fails to pay any portion of the wages due to an employee, according to the wage rate applicable to the employee, within a reasonable time from the date on which that employee performed the work for which the wages are

compensation. The Ordinance defines reasonable time as no later than 14 calendar days from the date the work was performed; however, this time may be modified to no longer than 30 days by an express agreement between the employer and employee that has been reduced to writing and signed by the employee. The Ordinance defines wage rate as "any form of monetary compensation which the employee agreed to accept in exchange for performing work for the employer, whether daily, hourly, or by piece." Thus, this provision could be interpreted more broadly than the employee's "regular rate" under the FLSA.

269.    Plaintiff has fully earned wages and is entitled to payment pursuant to Defendants own written policy and related laws.

270.    Specifically, Plaintiff is entitled to the unpaid personal time off that accrued during her last two years of employment of over 30 hours pursuant to Miami-Dade Wage Theft Ordinance, Chapter 22 of the Miami Dade and Defendant's own written policy, plus liquidated damages, costs, attorney fees, etc.

271.    This money was owed for more than 3 months after Plaintiff's termination even after receiving written notice from an attorney, which Defendant has not provided any reasonable reason for such a delay of earned wages.

272.    WHEREFORE, Plaintiff respectfully prays for judgment in the amount of the unpaid wages and overtime plus interest and reasonable attorneys' fees and costs pursuant to Miami-Dade Wage Theft Ordinance, Chapter 22 of the Miami Dade, and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A.  Accept jurisdiction over this matter;

B. That this Court enjoin Defendant from engaging in like conduct in the future;

C. Monetary damages to compensate for all future lost salary and benefits;

D. Liquidated damages equal to an amount awarded hereunder pursuant to the FMLA;

E. Award Plaintiff for past and future loss of wages and benefits, plus interest;

F. Award Plaintiff compensatory and punitive damages;

G. Order Defendant' to reinstate Plaintiff to a position comparable to the former position or, in lieu of reinstatement, award front pay (including benefits);

H. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action.

I. Additional amounts as the jury and this Court shall deem proper under the circumstances including accrued interest thereon, injunctive and all varieties of equitable relief including preliminary relief.

Dated: July 21, 2019
Miami, Florida

Respectfully submitted,
AN Law Firm, P.A.
/s/ Alberto Naranjo
Phone: 305-942-8070
Fax: 305-328-3884
Email: AN@ANLawFirm.com
7900 Oak Lane #400 AN Law
Miami Lakes, FL 33016
***ATTORNEY FOR PLAINTIFF***